ELIZABETH W. EMERSON *vs.* LOWELL GAS LIGHT COMPANY
HANNAH A. EMERSON *vs.* SAME.

In an action against a gas light company to recover damages for an injury to the plain-
tiff's health caused by an accidental escape of gas from a main pipe in a public street,
from which it passed through various sewers and drains into the plaintiff's cellar and
house, no exception lies to the refusal of the judge to allow evidence of the escape of gas
into other houses at the time alleged, and that the defendants were negligent in relation
thereto, before it has been shown that gas came into the plaintiff's house. Nor can a
physician, who has been in practice for several years, but who has had no experience as
to the effects upon the health of breathing illuminating gas, be allowed to testify in rela-
tion thereto as an expert. And experience in attending upon other persons who, it is
alleged, were made sick by breathing gas from the same leak is insufficient for this pur-
pose.

A plaintiff's narrative declarations of past events, though made to his attending physician,
are incompetent evidence in his favor.

An expert may not only testify to opinions, but may state general facts which are the re-
sult of scientific knowledge or general skill.

Two actions of tort, tried together, against a gas light com
pany for an injury to the plaintiffs' health from the inhalation
of gas which escaped from the defendants' pipes.

At the second trial of these cases in the superior court, before
*Wilkinson,* J., it appeared that in January 1857 the gas escaped
from the defendants' pipes under the same circumstances re-
ferred to in the former report of these cases. 3 Allen, 410. The
plaintiffs, before introducing any evidence that the gas entered
their house, offered to show by one Sleeper, who lived in the
Sumner block directly opposite, that the gas escaped from the
same leak into that block, and that the defendants upon being
informed were negligent in reference to the same. The judge
ruled that the evidence was inadmissible at that stage of the
case, and it was not again offered.

A physician named Bass was called by the plaintiffs, whose
whole experience in relation to the effects upon the health of
breathing illuminating gas arose, it was admitted, from the gas
from this leak, in a neighboring house. The plaintiffs offered to
show that " he attended as a physician other patients who be-
came sick in another house in the neighborhood where the gas
from this leak came in, soon after the gas came into said othei

house, and whether he there gained any experience as to the effects of breathing the gas, upon human health." The evidence was rejected.

The plaintiffs introduced evidence tending to show that soon after the gas came into their house they became ill, and were attended by a physician who is now dead, and that they were both attacked with a similar illness in the following spring and were attended by a Doctor Huntoon. The deposition of Dr. Huntoon was then offered by the plaintiffs. There was no other evidence that he was an expert except that he was and for several years had been a physician in practice. He was asked if the plaintiffs told him of gas entering their house the year before, and that the inhaling of it made them sick; and whether the inhalation of the gas would be an adequate cause of the sickness of the plaintiffs, while he attended them. The evidence was rejected.

Prof. Eben N. Horsford, whose qualifications as an expert were proved, was called as a witness by the defendants, and was allowed to testify, under objection, that works for manufacturing illuminating gas were known to have made their neighborhood exempt from cholera and yellow fever, and generally healthy, that the exhalations about gas works are healthful, and that men exposed to breathing gas in the works live as long and are as healthful as other men.

The jury returned verdicts for the plaintiffs, with $10 damages in the first case, and $5 in the second; and the plaintiffs alleged exceptions.

*D. S. Richardson & A. R. Brown*, for the plaintiffs.

*J. G. Abbott & W. P. Webster*, for the defendants.

CHAPMAN, J. 1. The testimony of Sleeper was rightly rejected at the stage of the trial at which it was offered; for it then had no apparent relevancy to the case of the plaintiffs. The fact that the gas escaped into the Sumner block did not, of itself, tend to prove that it also escaped into the plaintiffs' house, on the opposite side of the street; and the fact that the agent of the defendants was negligent as to the Sumner block did not, of itself, tend to prove that he or any one else was negligent in

respect to the plaintiffs. If the plaintiffs had other evidence to offer which might make this testimony relevant, it was within the discretion of the court to reject this until the other should be put in; the order in which the evidence shall be offered in such a case, being subject to the control of the presiding judge.

2. The testimony of Dr. Bass as to his experience relative to the breathing of burning gas could have no relevancy to the case, except as it might tend to show that he was an expert. It was for the presiding judge to decide whether he was proved to be an expert, and the evidence on that point was addressed to him, and not to the jury. If he was excluded, no part of his testimony tending to prove him to be such should go to the jury. This court may correct any error in the admission or rejection of evidence on this point, and also in the decision of the judge to admit or reject an expert, so far as it is an error in law. The testimony offered as to Dr. Bass was, that he was a physician, and as such had witnessed the effects of the gas which escaped from the defendants' pipes at the time when the plaintiffs allege that they were injured. The persons whom he saw lived in another house in the neighborhood. The mere fact that he was a physician would not prove that he had any knowledge of gas without further proof as to his experience; for it is notorious that many persons practise medicine who are without learning; and a physician may have much professional learning without being acquainted with the properties of gas, or its effect on health. And the observation of a man who is at the time inexpert is of no value, and does not qualify him to give opinions. The court are of opinion that the testimony of Dr. Bass was rightly rejected.

3. Dr. Huntoon's testimony was also rightly rejected; though, in addition to the fact that he was a physician, it appeared that he had been in practice for several years. But mere practice as a physician did not of necessity give him any knowledge as to gas. His statement of what the plaintiffs told him would not have been evidence if he had been an expert. It could not be admitted as *res gestæ*, but was the recital of past events.

4. One who is an expert may not only give opinions, but

may state general facts which are the result of scientific knowl-
edge, or professional skill.   As it was admitted that Professor
Horsford was an expert, the questions put to him and his an-
swers were admissible on this ground.

*Exceptions overruled.*